# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1999 SESSION



FILED

March 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9805-CC-00139 |
| Appellee, | ) | |
| | ) | HARDIN COUNTY |
| VS. | ) | |
| | ) | HON. C. CREED McGINLEY, |
| RICKY KEELE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sale of Methamphetamine) |

**FOR THE APPELLANT:**

**J. DANIEL FREEMON**
327 West Gaines Street
P.O. Box 727
Lawrenceburg, TN  38464-0727

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**MARVIN E. CLEMENTS, JR.**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**G. ROBERT RADFORD**
District Attorney General

**JOHN W. OVERTON**
Assistant District Attorney General
P.O. Box 484
Savannah, TN  38372-0484

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

Defendant, Ricky Keele, was found guilty by a Hardin County jury of one count of selling methamphetamine, a Class C felony. The trial court sentenced defendant to a Range I sentence of four years and denied alternative sentencing. In this appeal as of right, defendant contends that:

(1)     the trial court's conduct was prejudicial;

(2)     the trial court failed to preserve and maintain its independence as a neutral and detached arbiter;

(3)     the trial court erred in imposing a four year sentence;

(4)     the trial court erred in denying alternative sentencing; and

(5)     the sentence was disproportionate to other defendants' sentences with like circumstances.[1]

This Court finds no reversible error and AFFIRMS the trial court's judgment.

## I. FACTS

Although sufficiency of the evidence is not at issue in this case, a brief recitation of facts is necessary to place the issues in proper perspective. On the morning of March 8, 1997, Donald Bullock offered to sell methamphetamine to Sylvester Island, an undercover drug task force operative. In the course of a discussion between Bullock and Island, defendant indicated that the drugs would be of better quality than the night before. Island told them he needed to get the money, dropped Bullock at a nearby auto parts store, and contacted Investigator Tommy Churchwell.

Churchwell met Island, searched him for drugs and money, placed a transmitter on him, and gave him $100 with which to make the buy. Island returned to pick up Bullock who directed him to defendant's home. Once there, Island gave the money to Bullock and was told to go home and wait for defendant and Bullock to deliver the drugs.

Island went home and waited approximately two hours during which time he

---

[1]We address these issues in an order different from that in defendant's brief.

2

did not hear from Bullock or defendant. Thinking they might have cheated him, Island returned to defendant's home to demand either the $100 or the drugs. When he arrived, an unidentified female directed Island to the woods behind the house where Bullock and defendant sat in defendant's truck.

Island pulled his car near to the truck and exited his car. Bullock got out of the truck and met him halfway. When Island made his demand, Bullock returned to the truck where defendant handed him something. Bullock came back to Island and removed two packets of drugs from his pants pocket. He gave the larger packet to Island and kept the smaller as "profit" on the transaction.

Bullock testified at trial that in exchange for Island's $100, defendant provided him with the methamphetamine he gave to Island. Island testified that the drugs he received from Bullock were the drugs he gave to Investigator Churchwell.

## II. CONDUCT OF THE TRIAL COURT

Defendant asserts that "the personal imitation of the Trial Judge ruffled his demeanor"[2] such that his conduct was prejudicial to defendant. To support this assertion, defendant cites two types of conduct: (1) the trial court's efforts to maintain the pace of the proceedings, and (2) a particular verbal exchange between the trial judge and defense counsel. Defendant specifically assigns as error the several instances in which the trial judge commented upon the slow pace of the trial and the trial court's reaction to defense counsel's thinly veiled accusation of partiality.[3]

---

[2]A reading of the trial transcript reveals no incidents of the trial judge being imitated. Rather, it appears that defendant meant to refer to "*intimations*." As a result, the state appears to have improperly addressed its argument. The result on appeal remains the same.

[3]During cross-examination of Bullock, defense counsel inquired as to the reason for the rescheduling of Bullock's sentencing hearing. The transcript reads as follows:

COUNSEL: Why was your sentencing hearing put off from the 2nd?

COURT: That was put off at the Court's motion Mr. Freemon. Let's move on.
COUNSEL: Was there any indication given by the Court that your testimony would in any way affect or impact the sentence that you would receive in your case?

A trial court has the inherent power to supervise and control its own court proceedings. State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994); State v. Bragan, 920 S.W.2d 227, 239 (Tenn. Crim. App. 1995). However, the trial court must take care not to convey to the jury an appearance of taking sides. *See* State v. Suttles, 767 S.W.2d 403, 407 (Tenn. 1989); State v. Brown, 823 S.W.2d 576, 588 (Tenn. Crim. App. 1991).

Our review of the transcript reveals nothing to indicate that the judge's attempts to speed the proceedings or his reaction to counsel's accusation were of a nature to cause the jury to perceive any bias against defendant.

This issue is without merit.

## III. SENTENCING

Defendant claims that the four-year sentence imposed upon him is improper. He claims the trial court improperly enhanced his sentence and denied alternative sentencing based solely upon his refusal to reveal the name of his drug suppliers. Defendant also avers the trial court imposed a disproportionate sentence as punishment for exercising his right to a jury trial rather than plead to the indictment.

Our review of the sentence imposed by the trial court is *de novo*, with a presumption that the determinations of the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Byrd, 861 S.W.2d 377, 379 (Tenn. Crim. App. 1993). The presumption of correctness which attaches to the trial court's action is conditioned

---

COURT: Mr. Freemon, I will answer that question. If the man testifies with candor and honesty, it might be taken into consideration by this Court. If he should lie, that also will be taken into consideration. That was put off not on motion of the State. That was put off on the Court's own motion.

COUNSEL: Could I ask the Court for what reason?

COURT: Because the Court chose to put it off.

COUNSEL: To assist the prosecution in this case?

COURT: Absolutely not. Let's take the jury out.

Although the witness' sentencing date was relevant to his credibility, counsel's implicit accusation of partiality of the trial judge in the presence of the jury appears to this Court to have been highly inappropriate.

4

upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn 1991).

Bullock testified at the sentencing hearing that defendant had methamphetamine "on hand" and that he saw defendant engage in many drug sales with many different people.  Defendant testified that he was not in the business of making money by selling drugs, but refused to reveal the names of his suppliers.

The trial court acknowledged the substantial proof of defendant's status as a "small time" dealer, but also noted his ready identity as a source of illicit drugs.  In particular, the court gave credence to Bullock's testimony which indicated defendant's involvement in the drug trade was more than a "casual flirtation."  To the trial court, these unindicted offenses, in addition to defendant's refusal to reveal his suppliers' identities, signified a pattern of behavior by the defendant to be weighed in its sentencing decision.

A review of the sentencing hearing transcript convinces us that the trial court did consider the sentencing principles and all relevant facts and circumstances surrounding this case.  Thus, our review is *de novo* with the attached presumption of correctness.


### A.  Length of Sentence

If mitigating or enhancement factors for sentencing are present, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  No particular weight for each factor is prescribed by the statute, but is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record.  State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.  Should there

be enhancing factors present, but no mitigating factors, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); *see* State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

In this instance, defendant was guilty of a Class C felony and was a Range I standard offender. Thus, the court determined the proper sentencing range as three to six years and then considered the enhancing and mitigating factors offered by counsel.

Defendant had three prior misdemeanor convictions for possession of marijuana, D.U.I., and public intoxication. The trial court agreed with the state that defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114(1). The trial court refused to find that defendant was a leader in the commission of an offense, or that he had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(2), (10). Conversely, the court refused to find that defendant's conduct neither caused nor threatened serious bodily injury, or that he played a minor role in the commission of the offense as suggested by defense counsel. *See* Tenn. Code Ann. § 40-35-113(1), (4).

As a result of its deliberations, the court found one applicable enhancement factor, no mitigating factors, and enhanced defendant's sentence from three to four years. Where our review, as here, reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

This issue is without merit.

**B. Denial of Alternative Sentencing**

6

Defendant argues that the trial court denied alternative sentencing based solely upon his refusal to reveal the names of his sources. However, a careful review of the record indicates that the court weighed other factors in coming to its final decision in this matter.

Co-defendant, Bullock, testified at trial and at sentencing. His testimony showed not only that defendant was the source of methamphetamine for the sale at issue in this case, but that Bullock saw defendant engage in many drug transactions with many different people. Defendant testified that he was not in the business of making money from drug sales. He also refused the court's request to reveal the names of his sources.

The trial court acknowledged defendant's presumptive eligibility for alternative sentencing, but found that defendant lacked candor and honesty in his dealings with the court and deemed defendant unamenable to rehabilitation. Upon this basis, the court denied alternative sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

There is no mathematical equation to be utilized in determining sentencing alternatives. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

It is improper for a trial court to deny alternative sentencing based solely upon a defendant's refusal to reveal the names of his sources. *See* State v. Tim Hensley, C.C.A. No. 03C01-9102-CR-00040, Johnson County (Tenn. Crim. App. filed October 16, 1991, at Knoxville), *rev'd in part on other grounds*, No. 01S01-9203-CR-00026 (Tenn. 1993). This Court certainly realizes the possible jeopardy

7

to safety that could result from such a disclosure. However, a trial court may consider such refusal along with other factors in determining whether alternative sentencing is in the best interest of the defendant and society. *See* State v. Larry Neal Wilson, C.C.A. No. 02C01-9303-CC-00040, Hardin County (Tenn. Crim. App. filed April 6, 1994, at Jackson).

In this instance, we note that the trial court considered defendant's refusal to name his sources in reaching its decision. If this were the sole basis for denial of alternative sentencing, it would be improper. However, the trial court specifically noted in ruling on the motion for new trial, that it was not the sole factor. The court also assigned great weight to Bullock's testimony at trial and sentencing which indicated the defendant had engaged in many drug transactions. The trial court also considered defendant's prior convictions, one of which was another drug-related offense. Further, the trial court did not find the defendant to be credible regarding his involvement in selling drugs. Untruthfulness may be considered in determining whether alternative sentencing is appropriate. State v. Dowdy, 894 S.W.2d at 306.

We are "not authorized to substitute [our] judgment for that of the trial court when [it's judgment] is supported by [the] evidence." State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). The trial court evaluated Bullock's testimony, defendant's testimony, and the circumstances surrounding the offense. It determined that defendant was not amenable to rehabilitation and chose to deny alternative sentencing. This determination is entitled to a presumption of correctness.

The defendant has not met his burden of showing that the denial of alternative sentencing was improper. This issue is without merit.

### C. Proportionality

Defendant contends his sentence is disproportionate to other defendants' sentences for drug convictions arising from the same undercover operation. As discussed above, the Sentencing Reform Act intends sentencing to be individually tailored to each offender based upon a variety of considerations. There is no

equation to follow, and sentencing must be determined on a case-by-case basis. Each sentence must be tailored to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d at 235.

The trial court clearly tailored defendant's punishment as it deemed proper. The fact that there exist other defendants with drug convictions who received lesser sentences is not determinative. Defendant's claim of a disproportionate sentence is misplaced given that each case will necessarily entail a different set of facts and circumstances to be considered by the trial court.

This issue is without merit.

## IV. CONCLUSION

Based upon the foregoing, the judgment of the trial court is AFFIRMED.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**


_____
**DAVID G. HAYES, JUDGE**


_____
**JOHN EVERETT WILLIAMS, JUDGE**