**STATE of Tennessee, Appellee,**

v.

**Mark SUTTLES, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Feb. 13, 1989.

James W. Greenlee, Charles S. Sexton, Sevierville, for appellant.

Bettye Springfield–Carter, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, for appellee.

OPINION

HARBISON, Chief Justice.

Appellant was indicted on several counts of sexual molestation of his ten-year-old

nephew. At the time of trial appellant was nineteen years old. All of the counts of the indictment were dismissed voluntarily by the State or by the jury at trial except for one count of crime against nature, T.C. A. § 39–2–612. Appellant was convicted on this count and sentenced to serve five years as a Range I standard offender.

The case was tried in a single day, much of which was spent in chambers conferences. Primarily the case revolved itself into an issue of credibility between the child victim and the youthful defendant. There were no witnesses to the alleged offense. The child alleged that it occurred on August 3, 1984. The appellant vehemently denied the offense on that day or any similar offense at any other time. There was no history of any other misconduct by the appellant toward his nephew, nor was there any showing that appellant had any prior criminal record. Several long-time residents of the community testified favorably as to his character, and several of them testified unfavorably as to the reputation or character of the accuser. The victim's own father obviously did not believe the charges and testified in favor of the appellant, who was his younger brother. A medical examiner could not corroborate the occurrence of the event. His examination of the victim seven days later revealed no trace of physical injury or any other evidence of sexual abuse. On the other hand, there was no evidence of any ill-will of the child toward his uncle or any motive on the part of the child to make a false accusation of sexual molestation.

The issues were classic ones for resolution by a jury. Taken most favorably to the State, the evidence was sufficient to convict beyond a reasonable doubt, but the issue was very close. Much more is required to sustain a criminal conviction than some material evidence. The evidence must be sufficient to sustain a finding of guilt beyond a reasonable doubt, T.R.A.P. 13(e), and the proof in this case is such that an objective examination of the record places it on the borderline.

Under these circumstances, the other procedural events surrounding the trial of this case assume an importance which they might not have if the proof of the State against the appellant were overwhelming. "The line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard to convict beyond a reasonable doubt." *State v. Carter,* 714 S.W.2d 241, 248 (Tenn.1986).

The child victim testified that he and his first cousin, who was about ten years old, took a short automobile ride with appellant, their uncle, who had been called to assist his sister in starting her stalled automobile. The sister's young child also accompanied them. After appellant was able to start her mother's automobile, this child rode home with her mother. On the way home appellant and the two boys stopped at a grocery store for soft drinks. The victim testified that his uncle stopped again in a secluded area in order to urinate. The victim accompanied him while the cousin remained in the automobile, and it was at that time that the victim said the sexual offense occurred.

Appellant admitted taking the two boys and the young child with him to assist his sister and bringing the two boys back home with him. He admitted stopping at a grocery store but denied any other stop or any misconduct of any kind.

At a jury-out conference prior to the beginning of trial, the trial judge found that the first cousin of the victim who had ridden in the car was not competent to testify as a witness. The child had a learning disability, and the trial judge concluded, after examining him in chambers, that the boy could not comprehend the significance of the oath or properly distinguish truth from falsehood. The trial judge, therefore, excluded the testimony of that witness, and it was never presented to the jury. The child, however, was not an eyewitness to any alleged sexual misconduct. He simply would have testified that he remained in the car while appellant and the victim left to urinate. Insofar as the record discloses, this was the extent of his knowledge of the matter.

At the same chambers conference, the trial judge examined the child prosecuting witness briefly and determined that he was competent to give evidence. After a jury had been selected and sworn, however, and after opening statements of counsel, when the State attempted to call the child as its first witness he appeared to be extremely uncooperative and unwilling to testify. The District Attorney asked for a chambers conference to which the trial judge agreed. A further lengthy chambers conference occurred with the District Attorney, the child's mother, the victim's therapist, appellant and defense counsel all present.

The transcripts of these chambers conferences are somewhat garbled and at places the reporter simply summarized what occurred. It is rather clear from the transcript, however, and from later remarks of the trial judge, that the child was not only interviewed in the presence of the persons above referred to, but that at some point the trial judge excused all of them and had a private conversation with no one present except himself, the child and the child's mother. The record shows the following:

> The Court: *Everybody get out.* (all out) Let the record show in Chambers now with the defendant and his attorney. State's attorney. Gentlemen, the young man indicated he would talk to me. *Wouldn't let anybody else in here. I let his mother stay.* He was nervous about you all. He told me ... as a matter of fact, he talked to me. He opened up. Back here. (Emphasis added.)

The trial judge then proceeded to relate to counsel the substance of some threats which the child said had been made against him by the appellant. There was no transcript made of the judge's interview with the witness. The judge stated, however, that fear of his uncle was not the real reason that the child was refusing to testify. He said that the child was frightened of all of the people in the courtroom and was embarrassed to testify in the presence of a number of spectators. The judge stated that the child's mother asked him if he could tell his story to the jury, and the child replied affirmatively.

The trial judge then stated that he had concluded that the child could testify if the courtroom were closed and the public excluded, except for members of the press. It developed that there were no members of the press present.

Defense counsel objected to this procedure, but over that objection the trial judge proceeded to close the courtroom and to let the child testify with only the parties and their attorneys and the jury present. The exact number of persons who were excluded is not clear, but the trial judge stated later in the record that he had counted several persons who returned to the courtroom after the partial closure had been concluded.

The Court of Criminal Appeals held that the actions of the trial judge in this connection were appropriate and were justified by the unusual circumstances presented. It is, of course, true that a trial judge may under some circumstances exclude members of the public from part of the proceedings. *State v. Drake,* 701 S.W.2d 604 (Tenn.1985). We do not reach the constitutional issue of a public trial raised by appellant, however, because we believe that reversible error occurred when the trial judge undertook to explain to the jury what had occurred. He did this both at the time he excluded the members of the public and again after the child had testified and the courtroom was reopened.

■ Appellant has assigned as error in the Court of Criminal Appeals and in this Court the remarks of the trial judge to the jurors as unduly commenting upon the credibility of the child witness, whose testimony was essential to any conviction in this case. The Court of Criminal Appeals held that this issue was waived because it had not been the subject of a contemporaneous objection or an issue raised in the motion for a new trial. The entire closure matter, however, was objected to, and the objection was overruled. Further, in our opinion, the comments of the trial judge to the jury, regardless of the correctness of the closure, were unnecessary and, in our

opinion, sufficiently prejudicial as to constitute plain error. *See* T.R.Cr.P. 52(b).

We recognize that the actions of the trial judge were well motivated and were taken with the best of intentions. Nevertheless in an extremely close case such as this, the trial judge must be very circumspect in making statements to the jury which might in any way reflect upon the credibility of a crucial witness. The record in this case is lengthy, but the following are some examples of the statements which were made to the jury.

After explaining that the trial had commenced at 1 p.m. and that it was now nearly two hours later, the trial judge told the jurors that important matters had been discussed by him and counsel. He also stated that he had excluded the public from the courtroom. He continued:

I tell you this and call to your attention, that this case involves a juvenile, an 11 year old young man sitting right over here looking at me right now. He told me in chambers, privately that he was intimidated, frightened, and uneasy and by a great big courtroom, and lots of people. He just didn't feel like he could say anything. This defendant's got a right to a speedy and public trial. There is a conflict between those two great Constitutional principles. A public trial would mean the public could be admitted, and the public could come, and if the public were in here, this young man told me he just could not ... he could not talk, he could not tell, he could not relate. So I've done this, I've taken the extraordinary step ... the first time I have ever done it; to exclude and close the courtroom. Exclude the public from the courtroom and close the courtroom. I do this because I believe it pre-eminent ... overriding, most powerful, that this man ... this young man be permitted to tell you what he has to tell.

The trial judge did admonish the jurors that they were to be the sole judges of the credibility of this witness. We believe, however, that it was wholly unnecessary for him to explain to the jurors that he had talked with the young man privately, had formed his own conclusions, and that it was important that the young man be permitted to testify.

After the child had testified, the trial judge, in the presence of the jury, ordered the doors of the courtroom opened and made the following statements:

Ladies and Gentlemen, I remind you again, now, the fact that the Court excluded the public from the courtroom is in no way to be interpreted as to be ... to enhance this witness's testimony, or to dramatize it or anything else. It is only that he ... was unable to talk to you with a courtroom full of people. And the court decided he was entitled to tell this jury what happened. You judge it just as you do that of all the other evidence in the case, you judge it particularly and you disregard the fact that the extraordinary step of excluding the public from the courtroom, took place, you now know why. That was the only reason. He is truthful, he is believable, he's not ... you judge him and all of the testimony in that light.

Again, after the jury reported their verdict, the trial judge, obviously concerned by the unusual proceedings which had taken place, stated into the record at length his reasons for having closed the courtroom. While it was appropriate for the trial judge to state his reasons on the record, in our opinion it was quite inappropriate for him to lecture to the jury during the trial and to emphasize that he had talked privately to the young man and formed his own conclusions as to why the child was reluctant to testify. The last statement which he made to the jury, quoted above, is ambiguous and uncertain in meaning. It could be construed that the judge was telling the jury that the child was believable. On the other hand, he may have been telling the jury that they were to be the judges of that question. The sentence is cryptic. The clause "he's not" was never completed.

■ Of course, judges in Tennessee are prohibited by the state constitution from commenting upon the credibility of witnesses or upon the evidence in the case. Tennessee Constitution Art. VI, § 9. In all

cases the trial judge must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury.

In the case of *Graham v. McReynolds*, 90 Tenn. 673, 18 S.W. 272 (1891) a witness had been confronted with a prior contradictory statement and was attempting to explain her testimony. The trial judge interjected:

> I take it that Mrs. McReynolds is doing the best she can in the matter.

This Court held that reversible error had occurred.

> The trial Judge should always be extremely careful not to express or intimate any opinion on any fact to be passed upon by the jury. It has been said by this Court: 'It is natural the jurors should be anxious to know the mind of the Court and follow it; therefore the Court cannot be too cautious in his inquiries.' *McDonald v. State*, 5 Pickle 164. 90 Tenn. at 684–685, 18 S.W. at 275.

The Court stated that the intentions of the judge were undoubtedly good, but that his comment upon the testimony of the witness was at best ambiguous and could have been taken by the jurors as an endorsement of her credibility. The court said:

> Whatever purpose his Honor may have had in his own mind, we think that this declaration, at this time and in this connection, naturally imported a suggestion to the jury that the Court was of the opinion that the witness was testifying in good faith, and the jury could not reasonably place any other construction upon it. We are constrained to hold that his Honor was in error. 90 Tenn. at 686, 18 S.W. at 275.

This is essentially the situation in the present case. The trial judge told the jurors that he had talked privately with this young man and had formed his own impressions and conclusions as to why the child appeared reluctantly to testify. On the other hand, the defendant insisted that these charges were fabricated by a little boy who had a bad reputation for misconduct in the community and that they were made, out of spite, out of childish imagination or were otherwise wholly fabricated. For the judge to tell the jury that he had personally talked to the boy without anyone else present except the child's mother, that he had concluded why the child was reluctant to take the stand, and had concluded that he should close the courtroom so that this very important testimony could be given was, in our opinion, erroneous and is cause for a new trial.

 It is hardly necessary to elaborate upon the action of the judge in this or any other criminal case in talking privately with a crucial witness out of the presence of the defendant. If nothing else appeared on this record, we would be constrained to reverse this case. We realize that child abuse cases are sensitive and difficult, but they are criminal trials and must be conducted accordingly. A judge is not permitted to make a private inquiry off the record and act upon the information so obtained. *Caldwell v. State*, 164 Tenn. 325, 48 S.W.2d 1087 (1932). Even in determining the competency of a child to be a witness, the judge should not examine the child outside the presence of the defendant in a criminal case unless the defendant agrees and waives the right to be present. *State v. Braggs*, 604 S.W.2d 883 (Tenn.Cr.App. 1980). *Cf. Allen v. State*, 384 So.2d 605 (Miss.1980); T.R.Cr.P. 43.

The judgments of the courts below are reversed and the cause is remanded for a new trial. Costs on appeal are taxed to the State.

COOPER and DROWOTA, JJ., and McLEMORE and ANDERSON, Special Justices, concur.