# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 13, 2001

## STATE OF TENNESSEE v. THOMAS L. JONES

**Appeal as of Right from the Criminal Court for Shelby County**
**No. 98-09945     John P. Colton, Jr., Judge**

---

### No. W2000-01028-CCA-R3-CD  - Filed September 24, 2001

---

The appellant was convicted by a jury in the Shelby County Criminal Court of second degree murder and was sentenced as a violent offender to twenty-one years incarceration in the Tennessee Department of Correction.  On appeal, the appellant raises the following issues for our review: (1) whether the evidence was sufficient to convict the appellant of second degree murder; and (2) whether the trial court erred by refusing to grant a mistrial because of improper jury instructions characterizing the appellant's statement as a confession.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and CORNELIA CLARK, S.J., joined.

Brett B. Stein and Larry A. Diamond, Memphis, Tennessee, for the appellant, Thomas L. Jones.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On the night of February 23, 1998, the victim, Latoya Tribbit, invited her current boyfriend, De Carlo Pitchford, to join her at the Mirage, a nightclub in Memphis.  While at the club, Pitchford spoke briefly with the appellant, who had previously dated Tribbit and by whom the appellant had a child.  Pitchford and the victim remained at the club until approximately 1 a.m. when they left to go to the victim's home.

Shortly after retiring for the night, Pitchford and the victim heard the appellant knocking on the door of the victim's house.  The victim asked Pitchford to answer the door and

advise the appellant that she was sleeping. Pitchford followed the victim's instructions; however, the appellant insisted that the victim come to the door. When the appellant insisted upon speaking with the victim, she refused and telephoned the appellant's mother to advise her of the appellant's actions.

Pitchford and the victim then watched through a window as the appellant walked backed to his car, turned around, and then returned to the front door. Pitchford immediately ran to the back door and was attempting to leave the house when he heard a loud "boom." When he peeked back into the living area, he saw that the appellant had kicked the front door off the hinges and was entering the house with a gun.

The appellant remained in the house with the victim for about five minutes before the appellant's mother arrived. Shortly after the appellant's mother entered the house, Pitchford heard several shots. The appellant then left the house, followed by his mother. Pitchford returned to the house where he found the victim, who had been shot multiple times.

The appellant was arrested a short time later at the home of his aunt. He was taken to the police station where he was advised of his rights. The appellant then gave a voluntary statement outlining his role in the victim's death. The appellant related that he had seen the victim at the Mirage and they had discussed their relationship. Before he left the club, the appellant bought flowers for the victim but was unable to find her. He left the club at approximately 1:30 a.m. and drove by the victim's house. When he saw that the door was padlocked, he decided to go home. After arriving home, the appellant looked at photo albums containing pictures of himself, the victim, and their child. He took a picture of the victim, cut it into pieces, and placed the pieces into an envelope along with a letter which he had written to the victim. He then decided to return to the victim's home.

After he left his house, the appellant realized that he did not have his gun with him. He returned to his house, retrieved the gun, and drove to the victim's house. When the victim refused to let him into the house, he walked back to the car, intending to leave. However, as he was leaving, he heard the victim and Pitchford laughing, and he changed his mind. He got out of his car and went back to the front door. When the victim refused to open the door, he kicked it off its hinges and went inside. The victim, who was hiding under the bed, came out, and they walked to the kitchen. They talked about their relationship for a few minutes. The appellant alleged that when his mother arrived, the victim grabbed the gun he was holding and they began "'tusslin' over it." He claimed that his finger was on the trigger, he heard a shot, and "she let go of the gun and it went off two more times." The appellant related that as he started to leave the kitchen, "I said to myself, if she ain't dead, I was gonna make sure she was." The appellant then shot the victim in the "jaw or ear." The victim raised her head and said "naw," and the appellant shot her again in the back of the head. The victim died of multiple gunshot wounds.

## II. Analysis
A. Sufficiency of the Evidence

-2-

On appeal, the appellant alleges that the evidence is not sufficient to support his conviction of second degree murder, insisting that this is a classic case of voluntary manslaughter. The appellant claims that he acted in a fit of passion brought about by seeing his "paramour" with another man, causing him to feel "cuckolded." Therefore, he contends that a rational jury could only have concluded that he was guilty of voluntary manslaughter, not second degree murder.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2789 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds by, State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence, State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), nor may this court substitute its inferences for those drawn by the trier of fact from the evidence, State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. Again, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict against a defendant removes the presumption of innocence and raises a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was not legally sufficient to sustain a guilty verdict. Id.

In this case, the evidence, taken in the light most favorable to the State, clearly supports the finding by the jury that the appellant committed second degree murder. Second degree murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1997). We note that "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (1997). In contrast, Tenn. Code Ann. § 39-13-211 (a) (1997) provides that "[v]oluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."

Again, we conclude that the evidence is sufficient to support the jury's determination that the appellant committed second degree murder. The evidence shows that the appellant encountered the victim and Pitchford at the Mirage club on the evening of the offense. He had a brief, unremarkable conversation with Pitchford and, some time later, spoke with the victim. Testimony of Pitchford and the victim's mother established that the victim and Pitchford had been dating for more than two years. The appellant was aware of their relationship, and he had also been

involved in other relationships. Pitchford testified that when the appellant came to the door, the appellant did not appear excited but was acting "normal." Notably, although the appellant testified that he was upset, he admitted that when he left his home to go to the victim's home, he realized that he did not have his gun and returned home to retrieve it.

When the appellant entered the victim's home, he spoke with her regarding their relationship. He characterized the shooting as an accident. Perhaps most telling is the appellant's admission that, after the initial shots, he made a calculated decision to kill the victim, saying, "I said to myself, if she ain't dead, I was gonna make sure she was." After shooting the victim, the appellant threw the gun into the river.

The jury was instructed on second degree murder, voluntary manslaughter, and reckless homicide. They obviously rejected the appellant's argument that he killed the victim while in a state of passion produced by adequate provocation. This was their right. In distinguishing second degree murder from voluntary manslaughter, this court has said that the degree of homicide in the killing is for the jury to determine. Wilson v. State, 574 S.W.2d 52, 55 (Tenn. Crim. App. 1978); see also State v. Williams, 38 S.W.3d 532, 539 (Tenn. 2001). This issue is without merit.

### B. Failure to Declare a Mistrial

In his next issue, the appellant argues that the trial court erred when it refused to grant a mistrial after improperly instructing the jury. He contends that, by instructing the jury that the statement given by the appellant was a confession, the trial court used language which was an impermissible comment on the evidence.

A mistrial should be declared in criminal cases only in the event that a manifest necessity requires such action. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). In other words, a mistrial is an appropriate remedy when a trial cannot continue or a miscarriage of justice would result if it did. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial lies within the sound discretion of the trial court, and this court will not interfere with the exercise of that discretion absent clear abuse appearing on the face of the record. See State v. Hall, 976 S.W.2d 121, 147 (Tenn. 1998) (citing State v. Adkins, 786 S.W.2d 642, 644 (Tenn.1990)). Moreover, the burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

> The record reflects that the trial judge gave the following instructions to the jury: Evidence of a confession has been introduced in this case. A confession is a statement by the defendant that he engaged in conduct which constitutes the crime charged and is an acknowledgment of guilt itself. The court has ruled that the confession is admissible in evidence, but it is your duty to judge its truth. In so judging, you should consider the circumstances under which the confession was obtained as well as any evidence which contradicts all or part of the statements made. You must consider all the statements made by the

defendant, whether favorable or unfavorable to him, and you must not disregard any of them without good reason. If the evidence in the case leads you to believe that the confession or any part of it is untrue or was never made, you should disregard it or that portion which you do not believe.

You are the sole judge of what weight should be given to those portions of the confession which you believe, and you should consider them along with all other evidence in the case in determining the defendant's guilt or innocence.

Article VI, section 9 of the Tennessee Constitution specifically provides that "[t]he Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." The purpose of this provision is to avoid giving "the jury any impression as to [the judge's] feelings or ... mak[ing] any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." State v. Suttles  767 S.W.2d 403, 407 (Tenn. 1989). Nonetheless, the trial judge has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986).

We are unable to conclude that the instructions given by the trial court were improper or that the court erred by failing to declare a mistrial. The trial court correctly noted that evidence of a confession had been introduced. It is undisputed that the appellant admitted to police officers that he shot the victim six times and his statement was introduced at trial. The details surrounding the killing were explicitly outlined by the appellant in the statement. The trial court made no comments regarding its opinion of the statement. The court's instructions clearly advised the jury that it was their duty to determine the truth of the confession and the circumstances surrounding it, and, should they determine that the confession or any part of it was untrue, they should disregard it. Additionally, the jury was advised that they were the sole judge of what weight should be given to the confession and that all other evidence in the case should be considered along with the confession in determining guilt or innocence. This issue is without merit.

### III.  Conclusion

Having concluded that there is sufficient evidence to support the conviction and that the trial court did not err by refusing to grant a mistrial, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE