IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2017

**STATE OF TENNESSEE v. DEWAYNE JONES**

**Appeal from the Criminal Court for Shelby County**
**No. 13-04800      J. Robert Carter, Jr., Judge**

_____

**No. W2016-02070-CCA-R3-CD**

_____

A jury convicted the Defendant, Dewayne Jones, of rape of a child, incest, and aggravated sexual battery for crimes committed against his daughter, and he was sentenced to an effective sentence of thirty-five years. The Defendant appeals, asserting (1) that the evidence was insufficient to sustain the convictions; (2) that the trial court committed error in questioning a witness; (3) that the trial court erred in failing to merge the convictions; (4) that the trial court improperly imposed consecutive sentences; (5) that the trial court lacked subject matter jurisdiction; and (6) that he is entitled to relief under a theory of cumulative error. After a thorough review of the record, we affirm the judgments of the trial court and remand for correction of a judgment form to reflect the proper statutory provision for the conviction offense.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Gregory D. Allen (on appeal) and John Dolan (at trial), Memphis, Tennessee, for the appellant, Dewayne Jones.

Herbert H. Slatery III, Attorney General and Reporter; Johnathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carrie Shelton-Bush and Kenya Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## FACTUAL AND PROCEDURAL HISTORY

The Defendant is the biological father of the victim, but he was absent during the bulk of her childhood. The victim's mother relied on the victim's paternal grandmother for help with childcare while the victim's mother finished high school. The victim's grandmother continued to help with the victim as the victim grew up, frequently keeping her on weekends. The victim enjoyed visiting her grandmother and playing with the victim's aunt, who was the victim's age.

In late 2012, the Defendant returned to the state and lived at the victim's grandmother's home, where the assaults occurred in early 2013, when the victim was eleven years old. At trial, the victim's diary was admitted into evidence,[1] and the victim testified regarding the events described in the diary. The victim stated that she wrote poetry and stories and that she wrote down what the Defendant had done to her "[t]o get it out of my head." She habitually wrote in the diary after returning to her house from her grandmother's house, and she testified that the dates of the diary entries reflected the dates that she wrote down the events. The victim hid her diary because she did not want her younger brother to find it and because she was scared that she would be blamed for the assaults. However, the victim began to take things belonging to her mother, such as family photos and clothing, and put them near the diary, hoping that her mother would look for her missing property, find the diary, and read it. The victim hoped that her mother would discover the abuse without the victim having to tell her directly.

The victim ultimately testified to three rapes that occurred in January or February 2013. During the first rape she described, the victim was asleep on the couch in the living room. She testified that she was a very heavy sleeper who "usually can't feel[] or hear anything," and that her mother frequently had trouble waking her up. The victim at first testified only that she "felt something," did not know what it was, and that she "figured" it out "when other stuff started happening." However, she clarified that what she felt was "[a]round the vagina area," that her pants were removed, and that "something was inside." She testified that she did not know who the perpetrator was "at first" but that the Defendant came in and out of the room. She also testified that her aunt was in the house and that she could not recall if her grandmother was there. She woke up the next morning and found her clothing rearranged. The victim read a diary entry dated January 27, 2013, in which she had written, "Today I got laid by my daddy…." She testified that she was describing "sex" and describing what the Defendant did.

---

[1] The exhibits are not included in the record on appeal.

Another rape occurred when she was going to the bathroom at her grandmother's home one morning. The Defendant stopped her on the way to the bathroom, retrieved a pregnancy test, went into the bathroom with her, and made her take the test. The victim's initial testimony was that after the test was negative, she did not "recall exactly what happened, I just remember something did." She also testified that she had spent the weekend of February 3, 2013, at her grandmother's home, but she did not recall whether the Defendant was there that weekend. She later testified, however, that the Defendant "ha[d] sex" with her after forcing her to take the pregnancy test, and she confirmed that she meant his "private parts" went into hers. A diary entry dated February 2, 2013, recorded, "Today I took a pregnancy test to see if I was pregnant by my dad, after that he told me I wasn't and he did me in the bathroom."

The victim also described the Defendant driving her home from her grandmother's house, pulling into an "abandoned work place," coming around to her side of the car, and raping her. The victim testified that there was a third diary entry but that she could not decipher her handwriting.

On cross-examination, the victim testified that she had found out what the word "laid" meant from television, that she heard the phrase "did me" on the show "Family Guy," that she learned what "having sex" was from television, and that she learned the word "rape" at school. She agreed that "a lot of this information comes from other children." The trial court at this point clarified with the victim that by "information," she meant the terminology she was using. The victim explained that she chose the words in her diary because "[t]he diction was stronger."

After the parties indicated that they had no further questions for the victim, the judge asked the victim questions to clarify her testimony:

> THE COURT: I have one set of questions. …[W]hen you were describing a minute ago you said he — in the bathroom, after the pregnancy test that your dad had sex with you; is that the word you used?
>
> A. No.
>
> THE COURT: Okay. What word did you use?
>
> A. He did me.
>
> THE COURT: Did me? Okay. Can you just tell me what that means? What that means in that instance, not on Family Guy, or anything else, but what happened to you in the bathroom?

A. I don't remember all of it, but I know that afterwards things happened, I can't recall what actually happened, I just know it happened.

THE COURT: Can you tell me what part you can recall?

A. Yeah.

THE COURT: Do you know what part of your body it involved?

A. The vagina.

THE COURT: Do you know what parts of anyone else's body that it may have involved?

A. A penis.

THE COURT: And can you tell me what, if anything, occurred between the penis and the vagina?

A. He went into my vagina.

Defense counsel requested a bench conference and objected to the questioning, explaining that he delayed the objection to avoid objecting in front of the jury. The judge explained that he wanted to clarify the testimony to aid in ruling on a motion for judgment of acquittal and that he was questioning the victim "not as an advocate on either side, but to find out just what exactly she meant" because she had "used some terminology that could be construed as meaning one thing" and he wanted to clarify her understanding of the terminology.

The victim's mother confirmed that she found the victim's diary on February 6, 2013, while looking for her car keys. She was shocked and took the diary with her to the police precinct. Law enforcement officers wanted to interview the victim, so she took the victim out of school and down to the police station. Officer Katillia James identified the diary she collected from the victim's mother, and she testified that the victim's mother was "visibly upset." The victim's mother testified that prior to the abuse, the victim had been "[h]appy and bubbly," but the victim became withdrawn and began exhibiting a temper in January 2013.

The victim's mother acknowledged that she was surprised by the victim's language and that the language in the diary was not typical of the victim's vocabulary.

- 4 -

She confirmed that the diary covered a very short span of time, from January 27th to February 3rd. The victim's mother also acknowledged that she did not see the abuse happen and that the victim did not talk to her about it, but she testified that the victim would not lie about "something such as that."

The victim was examined at the Rape Crisis Center immediately after her police interview. Dr. Nina Sublette, a nurse practitioner, examined the victim at the Rape Crisis Center, outside the presence of her mother. The victim told Dr. Sublette that the Defendant had fondled her while she was sleeping and that he raped her, made her take a pregnancy test, and then raped her again. The last assault had occurred just under seventy-two hours before the victim was brought in, so Dr. Sublette performed a pelvic exam. Dr. Sublette testified that she would not necessarily expect to see a physical injury after a rape, in part because the type of tissue present heals very quickly. The victim, however, did have an abrasive injury or cut that was "consistent with a blunt penetrating object." Dr. Sublette testified that she would be surprised if evidence were recovered from the internal swabs taken from the victim because of the length of time that had passed, because the victim had taken multiple showers, and because she was experiencing a discharge that would have cleaned out any semen deposited. On cross-examination, Dr. Sublette explained that there was no way to confirm medically whether the victim's vagina had been penetrated, but that her injury was consistent with sexual assault. Agent Donna Nelson, a forensic scientist with the Tennessee Bureau of Investigation, testified that no semen was recovered but that an absence of evidence would be "common for that time frame."

The Defendant chose not to testify after a lengthy dialogue during which he made various nonresponsive statements to the effect that he refused to enter into any contracts and reserved his rights under the Uniform Commercial Code.[2]

The victim's grandmother testified that on January 27, 2013, the Defendant called at around 2:00 p.m. and took the victim's grandmother, the children, including the victim, and some other family members to a casino and a restaurant. The victim's grandmother stated that the victim had been at the victim's grandmother's home, that they went to the casino together, and that they dropped off the victim on the way home.

The State elected to use the rape in the bathroom as the factual basis for the charges of rape of a child and incest and the assault on the living room couch as the

---

[2] The Defendant also filed numerous incomprehensible documents purporting to reject the jurisdiction of the State of Tennessee, and the record reveals that the judge who was initially assigned to this case recused himself because the Defendant had threatened his life.

factual basis for the aggravated sexual battery charge. The jury convicted the Defendant as charged.

The trial court sentenced the Defendant to twenty-five years for rape of a child, four years for incest, and ten years for aggravated sexual battery. The court ordered the sentences for rape of a child and aggravated sexual battery to run consecutively, for an aggregate sentence of thirty-five years. At the motion for a new trial, the Defendant contested only the sufficiency of the evidence, and the trial court denied the motion.

## ANALYSIS

On appeal, the Defendant asserts that the evidence was insufficient to support the verdicts, that the trial court erred in clarifying the victim's testimony, that the aggravated sexual battery conviction should have merged into the rape of a child conviction, that the Defendant was improperly given consecutive sentences, that the Defendant's attempt to remove the case to federal court removed the case from the trial court's jurisdiction, and that he is entitled to cumulative error relief.

## I. Sufficiency of the Evidence

The Defendant argues that the victim's testimony regarding the crimes was so vague and contradictory that it is insufficient to establish that the crimes occurred. This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). In evaluating the sufficiency of the evidence, the court must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from the evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). A jury's verdict of guilt, approved by the trial court, resolves conflicts of evidence in the State's favor and accredits the testimony of the State's witnesses. *State v. Henderson*, 531 S.W.3d 687, 691 (Tenn. 2017). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court must afford the prosecution the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). A guilty verdict replaces the presumption of innocence with one of guilt, and on appeal, the defendant bears the burden of demonstrating that the evidence is insufficient to support the conviction. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013).

To convict the Defendant of rape of a child in this case, the State had to show that the Defendant unlawfully sexually penetrated the victim when she was more than three but less than thirteen years old. T.C.A. § 39-13-522(a). Sexual penetration includes sexual intercourse. T.C.A. § 39-13-501(7). The Defendant was also convicted of incest, for which the State had to demonstrate that the Defendant engaged in sexual penetration with the victim, knowing the victim to be his natural child. T.C.A. § 39-15-302(a)(1). Finally, the Defendant was convicted of aggravated sexual battery, which required the State to show that the Defendant engaged in unlawful sexual contact with the victim when she was less than thirteen years old. T.C.A. § 39-13-504(a)(4). Sexual contact "includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, … if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6).

Here, the victim testified that she was the Defendant's daughter and that, when she was eleven years old, he had sexual intercourse with her in the bathroom after forcing her to take a pregnancy test. She also testified that, around the same time, the Defendant had intercourse with her on the couch at her grandmother's home. While the victim's testimony began with generalities, such as that she "felt something" on the couch or that she only remembered that "something" happened in the bathroom, she eventually clarified that the Defendant penetrated her vagina with his penis in the bathroom and that something was inside her vagina when she was on the couch. The victim's testimony that she was raped was also corroborated by a physical injury found by Dr. Sublette shortly after one of the assaults. Although the victim initially stated that she could not remember if the Defendant was at her grandmother's house on the weekend of February 3, 2013, her diary, which recorded the assaults, was introduced into evidence, and she testified that the dates in it were an accurate reflection of the dates of the events. Her diary likewise identified the Defendant as her assailant on the couch, and her testimony that the Defendant was the only person who came in the room could have led the jury to rationally infer the Defendant's identity. The victim confirmed in her testimony that the diary entry was describing sexual intercourse on the couch and that she was describing what the Defendant did.

The Defendant asserts that the victim's testimony was vague and inconsistent. Inconsistent testimony may only be the basis for overturning a verdict when "inaccuracies or inconsistencies … 'are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt.'" *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (quoting *State v. Radley,* 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)). Here, the jury heard the victim's account and ultimately credited her contention that the Defendant raped and assaulted her. While the victim may have been reluctant to testify, her testimony amounted to an assertion that the Defendant raped her on those two occasions and that she then went home and recorded the assaults in a diary. We conclude

- 7 -

there were no inconsistencies in her testimony so unsatisfactory as to create reasonable doubt. The trial judge noted at sentencing that the victim was obviously "conflicted" about testifying at trial, and her credibility was a question of fact for the jury's determination. The evidence is sufficient to uphold the verdicts.

## II. Trial Court's Questioning of the Victim

The Defendant asserts that the trial court's questioning of the victim suggested that the Defendant was guilty, was aimed at establishing the State's case, and was in response to testimony which did not need clarification. The State responds that the Defendant, who did not raise the issue in his motion for a new trial, has not established plain error.

We agree with the State that the failure to raise the issue in the motion for a new trial constitutes waiver. *See* Tenn. R. App. P. 3(e) (noting that in a case tried by jury, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, … or other action committed or occurring during the trial of the case … unless the same was specifically stated in a motion for a new trial."). An issue which has been waived may be reviewed by this court for plain error. *Smith*, 436 S.W.3d at 775 n.16. In reviewing for plain error, the following factors must be established: a) the record clearly establishes what occurred in the trial court; b) a clear and unequivocal rule of law was breached; c) a substantial right of the accused was adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is necessary to do substantial justice. *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Additionally, "'the plain error must be of such a great magnitude that it probably changed the outcome of the trial.'" *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (quoting *Adkisson,* 899 S.W.2d at 642). A court need not consider all the factors if it is clear that the defendant will fail to establish at least one. *State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010).

We conclude that the Defendant is not entitled to relief because no clear and unequivocal rule of law was breached. Under Tennessee Rule of Evidence 614, "[t]he court may interrogate witnesses." Tenn. R. Evid. 614(b). The Advisory Commission Comment notes, however, that the judge should avoid commenting on the evidence as prohibited by article VI, section 9 of the Tennessee Constitution, which states that judges "shall not charge juries with respect to matters of fact." It is incumbent upon the trial judge to "be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *State v. Suttles*, 767 S.W.2d 403, 406-07 (Tenn. 1989) (reversing based on judge's comments informing the jury that he had spoken privately with the victim, had formed impressions and conclusions regarding the child's reluctance to testify, and that it was important for the witness to be permitted to testify). Nevertheless,

the court is permitted to make an impartial inquiry "to either clarify a point or to supply any omission." *State v. Schiefelbein*, 230 S.W.3d 88, 118 (Tenn. Crim. App. 2007). When a court has improperly commented on the evidence, the comments must be considered in the overall context of the case to assess prejudice. *State v. Hester*, 324 S.W.3d 1, 89 (Tenn. 2010) (appendix).

Here, the victim initially testified that she remembered "something" happened in the bathroom but could not recall what happened. On further questioning, she testified that the Defendant "ha[d] sex" with her, that his private part went into hers, and that her diary recorded, "[H]e did me in the bathroom." When she acknowledged on cross-examination that the terms she was using in the diary and in her testimony were terms she had gleaned from television and from the schoolyard, the trial court undertook to ask her exactly what she meant when she used those terms. The victim ultimately clarified that she understood the terms and that she meant that the Defendant's penis went into her vagina. The trial court explained on the record that the questioning was intended to establish whether the child victim knew the meanings of the terms she was using to describe the sexual assaults and that the court wished to clarify her testimony so that it could make a ruling on a motion for judgment of acquittal.

We conclude that the trial court's questions did not constitute an improper comment on the evidence. The questions did not suggest any answer, and instead were intended "to either clarify a point or to supply an[] omission." *Schiefelbein*, 230 S.W.3d at 118. This court has determined that similar questions were not improper. In *Schiefelbein*, this court concluded that the trial court's question to an expert witness did not breach a clear and unequivocal rule of law or affect a substantial right of the defendant because there was no "indication of the trial court's opinion of the evidence, and the jury was properly informed that it had complete fact-finding authority." *Id.* at 120. The court also found nothing amiss in the judge's asking the victim's mother, pursuant to a juror's submitted question, whether the victim had told friends of the abuse because the judge "made no statements which would reflect upon the weight or credibility of the evidence." *Id.* at 121; *see State v. Lance Elliott Falcon*, No. E2015-00935-CCA-R3-CD, 2016 WL 4409792, at *4 (Tenn. Crim. App. Aug. 17, 2016), *perm. app. denied* (Tenn. Dec. 14, 2016) (concluding that the trial judge's question to the defendant, asking if the defendant was accusing the victim of lying, did not breach a clear and unequivocal rule of law and relief was not necessary to do substantial justice). The trial court's questions in this case were not a comment upon the evidence but a clarification of the child's understanding of the sexual terminology she used, and accordingly no clear and unequivocal rule of law was breached. The Defendant is not entitled to relief.

## III. Merger

The Defendant next asserts that the aggravated sexual battery conviction should have merged into the rape of a child conviction.[3] The State asserts that the issue is waived and does not merit plain error review. We agree with the State that the failure to raise the issue at the trial level has resulted in waiver. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. App. P. 3(e); *State v. LaJuan Harbison*, No. E2015-00700-SC-R11-CD, __ S.W.3d __, 2018 WL 328885, at *9 (Tenn. Jan. 9, 2018) ("To preserve the double jeopardy issue, [the defendant] had to raise it in his motion for new trial and appellate brief."). Furthermore, no clear and unequivocal rule of law was breached because the conviction for aggravated sexual battery was premised on the assault of the victim while she was on the couch, whereas the rape of a child conviction was premised on a separate assault which occurred in the bathroom at a different time. *See State v. Watkins*, 362 S.W.3d 530, 545 (Tenn. 2012) ("When a court determines that separate convictions do not arise from the same act or transaction, then there cannot be a double jeopardy violation; thus, courts need not proceed to the second step of the *Blockburger* test."); *Adkisson*, 899 S.W.2d at 641-42 (holding that plain error relief is only merited when all five factors have been met, including the breach of a clear and unequivocal rule of law). The trial court committed no error.

## IV. Sentencing

The Defendant does not challenge the trial court's methodology in imposing consecutive sentences, but essentially argues that consecutive sentencing was in error because his dual convictions for aggravated sexual battery and rape of a child constituted a double jeopardy violation. We have determined above that there was no double jeopardy violation in this case. Furthermore, the trial court here made the necessary factual findings underlying the statutory conditions for imposing consecutive sentences, and we discern no abuse of discretion. *See State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013); T.C.A. § 40-35-115(4), (5).

---

[3] The Defendant acknowledges that his convictions for rape of a child and incest do not violate the principles of double jeopardy. *See State v. Beauregard*, 32 S.W.3d 681, 683 (Tenn. 2000) (concluding that convictions for rape and incest do not violate double jeopardy because each requires an element, familial relationship or force, not required by the other).

## V. Jurisdiction

The Defendant next asserts that the trial court lacked jurisdiction because the Defendant untimely and unsuccessfully attempted to remove his state criminal cases to federal court. The record does not reflect any attempted removal in this case, and the Defendant's argument consists entirely of a request for this court to take judicial notice of the record and arguments in the Defendant's 2015 conviction for aggravated assault. *See State v. Dewayne Jones*, No. W2016-00074-CCA-R3-CD, 2017 WL 2998900, at *3-4 (Tenn. Crim. App. July 14, 2017), *perm. app. denied* (Tenn. Oct. 6, 2017).[4] The Defendant acknowledges that this court rejected the argument that the trial court lacked jurisdiction in his aggravated assault case, and he raises the argument here to preserve it for further review. *See id.* Like the Defendant, we resolve this issue by referring to the proceedings in his aggravated assault case, where this court concluded that "the Defendant's late-filed, incomprehensible removal petition was insufficient to properly invoke the removal statute and that the trial court retained jurisdiction to try the Defendant, to sentence him, and to enter the uniform judgment of conviction." *Id.* at *6.

## VI. Cumulative Error

Because the Defendant has demonstrated no error, he is not entitled to relief for cumulative error. *Hester*, 324 S.W.3d at 77 ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings.").

## CONCLUSION

Based on the foregoing reasoning, the Defendant's convictions and sentences are affirmed. We note that the judgment sheet for the incest conviction lists the incorrect statutory provision for the conviction offense and remand for correction.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[4] The Defendant's brief in his aggravated assault case requested this court to take judicial notice of the federal court's records regarding removal.