# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 21, 2009 Session

## STATE OF TENNESSEE v. DON BIRDWELL

**Direct Appeal from the Circuit Court for Grundy County**
**No. 4349     Thomas W. Graham, Judge**

---

**No. M2008-02313-CCA-R3-CD - Filed July 29, 2010**

---

Defendant, Don Birdwell, was convicted of one count of aggravated assault, a Class C felony, and one count of vandalism of property valued between $1,000 and $10,000, a Class D felony.  The trial court sentenced Defendant as a Range I, standard offender, to concurrent sentences of three years, six months for his aggravated assault conviction, and two years, six months, for his vandalism conviction, for an effective sentence of three years, six months. The trial court ordered Defendant to serve ninety days in confinement, after which the sentence was suspended and Defendant placed on probation.  On appeal, Defendant argues that (1) the evidence is insufficient to support his convictions of aggravated assault and vandalism; (2) the trial court impermissibly commented on the evidence; and (3) the trial court erred in denying Defendant's request for full probation.  After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Don Birdwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James Michael Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

Marilu Gilbert, the victim, testified that in July 2006 she bought approximately five acres of property located at 1121 Barker Road in Grundy County. The victim said that Defendant owned property adjacent to her land. Shortly after she moved in, Defendant told the victim that he had completed a survey of his property in January 2006. Defendant said that according to this survey, the victim's chain link fence had been constructed on his property, and an outbuilding located at the back of the victim's property was partially on Defendant's property. Defendant stated, however, that he believed the survey was incorrect. Defendant told the victim that his property line extended much further into her property than what was indicated on the survey and that he planned to order another survey.

The victim said that Defendant never hired a surveyor despite her repeated requests that he do so. The victim stated that Defendant became "more aggressive" during their conversations. Defendant told the victim that he would use a bulldozer to tear down her chain link fence and dig up the driveway. The victim stated:

> he kept telling me that he was tired of telling me he knew where the fence line was, that people who wouldn't listen to him and kept trying to steal his property, [that] there was nothing to do but kill them. He said that once, and then the second time he said that, he said, "And that includes you."

In January 2007, Defendant again told the victim that he was going to order a survey and asked her to be present while the survey was conducted. The victim told Defendant that she would be home the first week in January except for January 3, 2007, when she had scheduled dental surgery. The victim returned home on January 3rd at approximately 5:00 p.m. What appeared to be survey stakes were driven into her driveway and pink tags were tied on her chain link fence. Defendant told the victim that this current survey was also inaccurate and insisted that he owned more property than what was indicated by the survey. Although Defendant briefly showed the survey to the victim, he refused to give her a copy.

The victim said that her property had been surveyed prior to the closing in 2006 by William Williford, and markers were placed along the boundary line. However, the markers were missing when she did a final inspection of the property before closing. The victim ordered a second survey from Mr. Williford in February 2007. After the survey was completed, the victim installed fencing approximately twelve to eighteen inches inside the boundary markers to accommodate any overlap in the property descriptions between her property and Defendant's.

On April 14, 2007, Defendant, using a backhoe, pulled up the posts supporting the victim's fence. The victim approached Defendant. Defendant said, "You stand right there." He pointed the backhoe in the victim's direction. The victim testified:

> He got off the backhoe and came up to the fence and pulled his right arm all the way back with his fist and he said, "If you were a G.D. [sic] . . . man, I would beat you to death right now. I'd beat the H-E-L-L [sic] out of you," and all, and then he got back on the backhoe and he leaned down to the left and when he came up he had a gun in his hand and he said, "I told you what was going to happen to you and your blankety blank [sic] fence if you kept trying to take my property." And he said, "I'll kill you," and he had a gun in his hand, and he was holding it close to his left side and just doing it like back and forth a little bit. He was so mad. He was spitting everywhere and he had drool off of his chin and I thought he was going to kill me.

The victim said that she was unable to move. Defendant eventually began tearing down the fence again, and the victim ran to her house. The victim said that during the incident she noticed Keith Tate's truck parked on Barker Road. The victim stated that Defendant destroyed approximately 210 feet of fencing, or two-thirds of the fence. The victim said that the entire fence cost $3,334.82. The victim stated, "It's all still laying there all tangled up. It's just ripped to shreds, it wasn't just pushed over."

On cross-examination, the victim compared the survey prepared by Mr. Williford on December 12, 2006, prior to the victim's closing, with the survey prepared by John W. Johnston, Jr. on January 5, 2007 at Defendant's request. The victim acknowledged that Mr. Johnston's survey showed an overlap between the victim's and Defendant's property of approximately two-tenths of one acre. The victim also acknowledged that she had filed a petition in Chancery Court prior to trial to determine the boundary line between the two properties, but the matter was still pending. On redirect examination, the victim said that she had not seen Mr. Johnston's survey prior to trial.

Roland Keith Tate testified that he was driving down Barker Road on April 14, 2007, when he noticed Defendant tearing down the victim's fence with a backhoe. Mr. Tate spoke to the victim and described her as "very upset." Mr. Tate stated that the property marker located at the corner of the victim's chain link fence had been there for years. Mr. Tate said that the fence Defendant tore down was located on the victim's side of the property marker.

William Sydney Williford testified that he has been a surveyor since 1986. Mr. Williford said that in preparing the victim's survey, he pulled the tax map for the property and the deeds for all of the adjoining landowners. Mr. Williford stated that both the victim's

and Defendant's property were originally part of the "Huling tract." Mr. Williford said that the property descriptions for the victim's property in the intervening deeds since 1968 were consistent. Mr. Williford said that Mary Jo Huling transferred property to Defendant in 1999. According to the property description in Defendant's deed, his property line extended onto the victim's property by approximately two-tenths of an acre.

Mr. Williford stated that he informed Defendant that he was going to re-survey the victim's property. Defendant met Mr. Williford at the boundary line. Mr. Williford asked Defendant where he thought the boundary line was located, and Defendant said that it went through the middle of the victim's house, or between eighty and one hundred feet inside the boundary line indicated in the property description contained in the victim's deed. Mr. Williford stated that the victim's chain link fence was situated approximately two inches from the corner marker. The driveway, which had been on the property for between ten and twenty years, was located inside the chain link fence. Mr. Williford said that both the chain link fence and the driveway were on the victim's property. On cross-examination, Mr. Williford acknowledged that he had observed a number of posts set in concrete during his survey, but he stated that the posts were not reflected on the survey because they were located on the victim's property.

The State rested its case-in-chief, and Defendant presented his defense. Defendant testified that he bought the property located on Barker Road from Mary Jo Huling. At that time, Clarence Pemberton owned the property next door. Defendant said that he and Mr. Pemberton had never had a disagreement over the boundary line between the two properties. Defendant stated that he placed posts embedded in concrete along the boundary line. Defendant said that the posts disappeared after the victim moved onto the property.

Defendant testified that he tore down the victim's fence because it was located on his property. Defendant denied threatening the victim. Defendant said that he spoke with the victim five or six times, and he never spoke any "hard words" to her. Defendant stated that he did not own a gun. Defendant said that he had a pair of channel lock pliers with him on the day of the incident.

## II. Sufficiency of the Evidence

On appeal, Defendant challenges the sufficiency of the evidence supporting both his aggravated assault and vandalism convictions. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of

innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

## A. Aggravated Assault

As relevant here, a person commits aggravated assault when he or she intentionally or knowingly commits an assault as defined in Tennessee Code Annotated section 39-13-101 and uses or displays a deadly weapon. *See* T.C.A. § 39-13-102(a)(1)(B). A person commits an assault if he or she "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." *Id*. § 39-13-101(a)(2). Defendant argues that while he may have been "angry and verbally abusive" during the confrontation on April 14, 2007, there was insufficient evidence that he intended to cause the victim to fear imminent bodily injury.

The victim testified that Defendant was armed with a gun during the confrontation. The victim stated that Defendant threatened to kill her, and that he waved the gun back and forth in front of her. The victim said that she could not move, and she thought Defendant was going to kill her. The jury heard Defendant's testimony that he was not armed and that he did not threaten to kill the victim. By its verdict, the jury obviously found the victim's testimony credible and rejected Defendant's version of the event, as was its prerogative. Viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of the offense of aggravated assault. Defendant is not entitled to relief on this issue.

## B. Vandalism

Defendant argues that the State failed to prove that he acted "knowingly" with respect to the destruction of the victim's fence. Citing Tennessee Code Annotated section 39-11-502, Defendant submits that his "good faith belief that the fence was on his property" indicated that he "was not aware of the nature of the conduct or of the circumstances so that he knew that he could not do what he did."

In order to support a conviction for vandalism, the State is required to prove: (1) that Defendant caused damage or destruction to real or personal property; (2) the damage or destruction was done knowingly; (3) the property belonged to the victim; and (4) Defendant did not have the victim's effective consent to destroy or damage her property. T.C.A. § 39-14-208. "Acts of vandalism are to be valued according to the provisions of § 39-11-106(35) and punished as theft under § 39-14-105." *Id*. § 39-14-408(c). The definition of value under T.C.A. § 39-11-106(36) includes the fair market value of the property at the time of the offense, or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense."

"[I]gnorance or mistake of fact is a defense to prosecution if such ignorance or mistake negates the culpable mental state of the charged offense." *Id*. § 39-11-502(a). However, the defense is "a narrow defense." *Id*., Sentencing Comm'n Cmts. A person acts "knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the conduct or that the circumstances exist." *Id*. §39-11-302(b). In the case *sub judice*, Defendant's belief that he owned the land under the victim's fence, whether "good faith" or not, did not serve to negate his knowing destruction of the victim's fence without her consent. Instead, Defendant's "mistake" is not one of fact, but of law. *See Cheek v. United States*, 498 U.S. 192, 199, 111 S. Ct. 609 (1991) (noting that it has long been held that ignorance of the law is no defense to criminal prosecution).

Although he cites no authority in support of his position, Defendant argues that he "had the right to present a defense based on his belief that he had a right to remove the fence since [he] had the good faith belief that the fence was on his property." Thus, a defense based on a mistake of fact, that is, whether or not Defendant had a good faith belief that he owned the land beneath the fence, is only pertinent if Defendant's theory of defense is a correct statement of the law.

Prior to the 1989 revisions of the Criminal Code, Tennessee Code Annotated sections 39-11-101, *et seq*., the statutes defining crimes addressed and prohibited numerous destructive acts in successive sections of the code. T.C.A. § 39-14-408, Sentencing Comm'n Comments; *id*. § 39-3-1301, et. seq. (repealed). Section 39-14-1408 consolidated and simplified the former code sections. *Id*. § 39-14-408, Sentencing Comm'n Comments. "[Section 39-14-408] is written broadly to include damage or destruction of *any* property without the consent of the owner." *Id*. (emphasis added).

Thus, for example, a panel of this Court has previously held that it is no defense to a charge of vandalism that the accused has a possessory interest in the property destroyed. *State v. Franklin Doug Sweeney, Jr*., No. M2006-02581-CCA-R3-CD, 2008 WL 2743693, at *8 (Tenn. Crim. App., at Nashville, June 16, 2008), *perm. to appeal denied* (Tenn. Dec.

22, 2008) (in which the defendant was accused of arson and vandalism after he set fire to his estranged wife's house).  The panel stated:

> [f]irst of all, we conclude contrary to Appellant's suggestion, that the legislature did not intend to absolve persons from criminal liability for vandalism merely because they have a possessory interest in the property vandalized. The statute prohibits the "damage" or "destruction" of property without the "owner's" consent. If we are to accept Appellant's assertion that he could not be guilty of vandalism because he had a possessory interest in the house at the time of the fire because he was still married to Mrs. Davis, Appellant would still not have the "owner's" consent to destroy the house and its contents as the house would be owned by both Mrs. Davis and Appellant. There is no testimony in the record to indicate that Mrs. Davis consented to the vandalism of the house. Moreover, the provision of Tennessee Code Annotated section 39-11-106(a)(36)(D) providing for a deduction in value calculation, but not absolution from criminal liability belie Appellant's contention.

*Id*. 2008 WL 2743693, at *8; *see* T.C.A. § 39-11-106(a)(36)(D) (providing that "[i]f the defendant gave consideration for or had a legal interest in the property or service that is the object of the offense, the amount of consideration or value of the interest shall be deducted from the value of the property or service ascertained under subdivision (A)(36)(A), (B), or (C) to determine value".

A second case, *State v. Anthony Noe*, No. 01C01-9407-CR-00252, 1997 WL 763030 (Tenn. Crim. App., at Nashville, Dec. 9, 1997), *perm. to appeal denied* (Tenn. Sept. 14, 1998), involved a dispute between the victim and the defendant over the victim's fence which extended into a city-owned alley which abutted the defendant's property.  The defendant argued that he did not act with the requisite intent to commit vandalism because the ownership of the destroyed fence was in dispute.  The defendant also asserted that he was acting "in a noncriminal fashion" because the fence interfered with his property rights by blocking the alley.  *Id*. at *2.  The panel found, however, that the evidence showed that the defendant knowingly cut down his neighbor's fence without consent, and affirmed the defendant's conviction of vandalism.  *Id*. at *2.

The statutory provisions setting forth the elements of vandalism, section 39-14-408, do not provide a defense to prosecution based on the location of the property destroyed.  *See* T.C.A. § 39-11-203(a) (stating that "[a] defense to prosecution for an offense in this title is so labeled by the phrase: 'It is a defense to prosecution under . . . that . . .'").  Instead, the State is required to prove only that the defendant caused damage to or destruction of *"any*

real or personal property of another . . . knowing that the person does not have the owner's effective consent." *Id*. § 39-14-408(a) (emphasis added).

Viewing the evidence in a light most favorable to the State, the victim built the fence after Mr. Williford's second survey of the property. The victim placed the fence approximately twelve to eighteen inches inside of the property line to accommodate the disputed strip of land as reflected on Mr. Johnston's survey. The victim testified that Defendant ripped up two-thirds of the fence with a backhoe. The victim stated that the fence cost approximately $2,222 to replace, or two-thirds of $3,334.82. Defendant acknowledged on direct examination that he tore down the victim's fence. Based on our review, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant was guilty of the offense of vandalism of property valued between $1,000 and $10,000. Defendant is not entitled to relief on this issue.

## III. Improper Comment on the Evidence

Defendant argues that the trial court made impermissible comments on the evidence on two occasions. The first comment occurred during Defendant's direct examination. Defense counsel began to question Defendant about Mr. Pemberton's knowledge of the boundary line, and the State objected on hearsay grounds. After sustaining the objection, the trial court observed that "everybody is bound and determined to make this a boundary line lawsuit." The trial court stated, "We're going to talk about that at the end of this trial. This is not a boundary line lawsuit." Defense counsel responded, "It has to go to [Defendant's] good faith, Your Honor, and his intent."

Later, during its instruction to the jury on the statutory elements of the offense of vandalism, the trial court stated, "And to make it perfectly plain, the property we're talking about here is the fencing. We're not talking about the land, we're talking about the fencing." Before the trial court finished instructing the jury, Defendant objected to the trial court's instructions to the extent that they did not reflect Defendant's position as stated in his motion for judgment of acquittal after the State presented its case-in-chief. *See* Tenn. R. Crim. P. 29(b). Defendant submits that the trial court's comments during his direct examination and during the jury's instruction essentially told the jury not to consider Defendant's theory of defense at trial, and these comments, therefore, were "tantamount to a comment on the evidence to the effect that [Defendant] was guilty."

In Tennessee, judges are constitutionally prohibited from commenting upon the credibility of witnesses or the evidence in a case. *See* Tenn. Const. art. VI, § 9 (providing that "judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law"); *State v. Suttles*, 767 S.W.2d 403, 407 (Tenn. 1989) ("In all cases the

trial judge must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury."). Our supreme court has held, however, that "not every comment on the evidence made by a judge is grounds for a new trial." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 134 (Tenn. 2004). The trial court's comments must be considered in the overall context of the case to determine whether they were prejudicial. *Id.* (citing *State v. Caughron*, 855 S.W.2d 526, 536-37 (Tenn. 1993).

The admission of evidence is a matter within the trial court's discretion, and it is undisputed that a trial court may limit testimony that is irrelevant. *State v. Dooley*, 29 S.W.3d 542, 548 (Tenn. Crim. App. 2000); *State v. Carroll*, 36 S.W.3d 854, 867 (Tenn. Crim. App. 1999). In this instance, the trial court allowed Defendant considerable leeway in introducing evidence to explain the basis of the dispute between the victim and Defendant which led up to the destruction of the victim's fence. The trial court cautioned Defendant, however, on several occasions that the ownership of the land was not relevant to establishing the statutory elements of the offense of vandalism. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The trial court observed at a hearing outside the presence of the jury and before the trial court's instructions to the jury that:

> [The ownership of the property matters] in your argument to the jury. As far as this Court's concerned, it has nothing to do with anything. The issue is whether or not [Defendant] threatened bodily injury on this woman and whether or not [Defendant] destroyed property of this woman, and it does not depend on whether he thought he owned [the] property or not. That may be an argument with the jury's contemplation of some basis of fairness, but it's not a legal argument.

As for the first comment cited by Defendant on appeal, the trial court was explaining that it was excluding Defendant's testimony about Mr. Pemberton's knowledge of the boundary line not only as hearsay but also as irrelevant to a material issue at trial. The trial court's comment, therefore, was not directed to the weight or credibility of the evidence but on its relevancy and was not improper in the context in which it was made.

As for the comments during the jury's instruction, the trial court instructed the jury, in part, that the State must prove beyond a reasonable doubt "that the defendant caused damage to any real or personal property" and "that the property was owned by another." We do not view the trial court's subsequent comment that "the property we're talking about here is the fencing . . . not . . . the land," as an impermissible comment on the credibility or guilt

of Defendant. Rather, the trial court has an obligation to properly instruct the jury, and, in so doing, may provide a supplemental instruction to clarify the original charge. *State v. Robinson*, 239 S.W.3d 211, 228 (Tenn. Crim. App. 1989). In light of the extensive testimony at trial concerning the dispute over the boundary line, we conclude that a clarification for the jury as to the object of the vandalism charge was not improper. Defendant is not entitled to relief on this issue.

## IV. Denial of Full Probation

At the sentencing hearing, the victim testified that she lost not only the value of the fencing through Defendant's conduct, but also her business. The victim stated that at the time of the incident, she was boarding goats for a customer. The customer cancelled the contract because she was afraid she would lose her goats if Defendant tore down the fencing again. The victim said that she was afraid to go to the back of her property because there was nowhere to hide if Defendant threatened her again. The victim stated that Defendant continued to come onto her property to cut hay and continued to maintain that he owned an acre of what the victim considered to be her property. The victim also said that Defendant covered up the drainage ditch that ran between the two properties so that her property was flooded. On cross-examination, the victim acknowledged that her civil petition to quiet title was still pending in Chancery Court.

Defendant's presentence report was introduced as an exhibit at the sentencing hearing without objection. According to the presentence report, Defendant was sixty-seven years old at the time of the sentencing hearing. Defendant reported dropping out of high school after his freshman year. Defendant reported working for the Coffee County Farmer's Coop for between twenty-five and thirty years. Defendant stated that he and his wife, Christeen Birdwell, have three adult daughters. Defendant reported that his mental and physical health were good, and he did not have any history of drug or alcohol abuse. Defendant was convicted of vandalism in 2003 and was sentenced to eleven months, twenty-nine days. Defendant's sentence was suspended and he was placed on probation. Defendant stated in the presentence report, "I have never pulled a gun on Marylu [sic] Gilbert. I do not own a gun like she described. I have never called[,] threatened or harrassed [sic] her. I have never called there 13-15 times like she stated."

At the conclusion of the sentencing hearing, the trial court sentenced Defendant, as a Range I standard offender, to concurrent sentences of three years, six months for his aggravated assault conviction, and two years, six months for his vandalism conviction, for an effective sentence of three years, six months. The trial court denied Defendant's request for full probation and ordered Defendant to serve ninety days in confinement, after which his effective sentence was suspended and Defendant placed on probation. On appeal, Defendant

does not challenge the length of his sentence. Defendant argues, however, that the trial court erred in denying his request for full probation.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court form which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correction, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. *Carter*, 254 S.W.3d at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). "A court shall consider, but is not bound by, this advisory sentencing guideline." *Id*. § 40-35-102(6)(D). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation. *Carter*, 254 S.W.2d at 347. The following considerations provide guidance regarding what constitutes "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1); *see also Carter*, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.

Defendant is eligible for probation because his actual sentence was less than ten years and the offenses for which he was sentenced are not specifically excluded by statute. *See* T.C.A. § 40-35-303(a). Because Defendant was convicted of Class C and Class D felonies, he is considered a favorable candidate for alternative sentencing. *See id*. § 40-35-102(6). We note, however, that "the determination of whether the [defendant] is entitled to an alternative sentence and whether the [defendant] is entitled to full probation are different inquiries." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing his or her suitability for full probation, even if the defendant should be considered a favorable candidate for alternative sentencing. T.C.A. § 40-35-303(b); *Boggs*, 932 S.W.2d at 477. In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In denying Defendant's request for full probation, the trial court found that some period of confinement was necessary to avoid depreciating the seriousness of Defendant's offenses. The trial court particularly considered Defendant's response to what was essentially a minor boundary dispute that could have easily been resolved through the court system. The trial court observed that:

the real issue here is just bulldozing somebody's property down without regard to how it might affect even that property as they say that wasn't in dispute,

even though some of it may have been in dispute, but the real serious question here was losing temper enough to threaten somebody's life and show a gun and that sort of thing.

The trial court found credible the victim's testimony that she was "scared to death" of Defendant, and that her situation was made worse by her isolation and lack of support from friends or family. The trial court also considered Defendant's prior conviction for misdemeanor vandalism, and the fact that an eleven month, twenty-nine day sentence for that offense did not deter him from committing another, more serious, vandalism offense.

Defendant argues that his offenses were not so "especially violent, horrifying shocking reprehensible, offensive, or otherwise of an excessive or exaggerated degree" as to deny his request for full probation. *See State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997). The trial court found otherwise based on Defendant's exaggerated responses to the erection of the fence between the two properties, noting that "[e]ven if she was on his property that gave [Defendant] no right to threaten her life or to go in with just sheer force and tear stuff up." Nonetheless, the seriousness of the offenses was not the trial court's only concern.

Although Defendant admitted destroying the victim's fence at trial, he expressed no remorse for his conduct. Moreover, the victim testified at the sentencing hearing that Defendant continued to ignore the boundary line between the two properties after trial. As for the aggravated assault offense, Defendant consistently maintained that he did not threaten Ms. Gilbert or wave a gun at her while he was tearing down the fence. "This court has previously recognized a 'nexus between a remorseful attitude and the potential for rehabilitation.'" *State v. Kevin Donald Friedman*, No. E2008-00353-CCA-R3-CD, 2009 WL 2424289, at *5 (Tenn. Crim. App., at Knoxville, Aug. 7, 2009), *perm. to appeal denied* (Tenn. Feb. 1, 2010) (quoting *State v. Tadaryl Darnell Shipp*, No. 03C01-9907-CR-00312, 2000 WL 290964, at *4 (Tenn. Crim. App. at Knoxville, Mar. 21, 2000), *no perm. to appeal filed*). In addition, the trial court also considered the fact that Defendant's prior vandalism conviction had not deterred him from engaging in similar, but more serious, conduct. *See State v. Lisa Gay Wilson*, No. E2007-02665-CCA-R3-CD, 2008 WL 5130609, at *5 (Tenn. Crim. App., at Knoxville, Dec. 5, 2008), *no perm. to appeal filed* (concluding that the trial court properly considered the defendant's commission of an earlier similar offense as reflecting poorly on the defendant's amenability to rehabilitation).

Based on our review of the record, we conclude that Defendant has not met his burden of demonstrating that the trial court abused its discretion in denying his request for full probation. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review, we affirm the judgments of the trial court.

_____

THOMAS T. WOODALL, JUDGE