IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2010 Session

## ERIC WRIGHT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24313      Lee Coffee, Judge[1]**

---

**No. W2009-00864-CCA-R3-PC  - Filed September 24, 2010**

---

In August 1990, a Shelby County jury convicted the petitioner of one count of robbery by use of a deadly weapon and two counts of assault with intent to commit murder in the first degree, all Class A felonies.  The trial court sentenced the petitioner as a Range III persistent offender to an effective sentence of 150 years in the Tennessee Department of Correction. This court affirmed his convictions and sentences by memorandum opinion pursuant to Rule 20 of the Rules of the Tennessee Court of Criminal Appeals.  The petitioner now appeals the post-conviction court's denial of relief, arguing that he received ineffective assistance of counsel at trial and on appeal and that his sentence violated the prohibition against ex post facto laws.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

James Robert Nowlin, Memphis, Tennessee, for the appellant, Eric Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Doug Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

---

[1] The trial judge in this matter was the Honorable Judge W. Fred Axley.  The Honorable Judge Joseph B. Dailey heard the petitioner's 2000 post-conviction petition.

This matter concerns the October 15, 1989 robbery of a Circle K service station on Lamar Avenue in Memphis, Tennessee. The evidence presented at the petitioner's trial showed that, at approximately 4:50 a.m. that day, two black males entered the store, and one of them shot Ricky Coleman, the store clerk's boyfriend, in the face without warning. The store clerk, Stella Oakes Coleman,[2] opened the register for the men, and they removed the cash from the drawer. Mrs. Coleman testified that there was approximately $20 in the register. The men demanded that she open the store's safe, but she was not able to open the time-lock safe. Instead, the men pressed the button on the safe that allowed clerks to access the currency when they needed change. In this way, the men took $10 in $1 bills from the safe. When Mrs. Coleman went to check on Mr. Coleman, who was lying on the floor, the shooter shot her twice.

As a result of the shooting, doctors removed a portion of Mr. Coleman's carotid artery. They did not remove the bullet that had traveled down to his neck. Mr. Coleman testified that he was unable to work because of his injury. As a result of her injuries, Mrs. Coleman was paralyzed from the chest down. She had limited use of her arms and hands but no use of her fingers. While in rehabilitation, Mrs. Coleman identified the petitioner as the shooter in two photospreads, one including an old picture of the petitioner and one including a contemporary picture. She also identified the petitioner as the shooter at his preliminary hearing and at his trial.

The trial jury convicted the petitioner of one count of robbery with a deadly weapon, a Class A felony, and two counts of assault with intent to commit first degree murder, both Class A felonies. The trial judge sentenced the petitioner as a Range III persistent offender to thirty years for the robbery count and sixty years each for the two assault counts. The judge ordered him to serve the sentences consecutively for an effective sentence of 150 years in the Tennessee Department of Correction.

The petitioner's trial counsel pursued a direct appeal on his behalf. On appeal, the petitioner argued that "(a) the 'evidence is insufficient to sustain a conviction,' (b) the 'verdict of the Jury and the Court is contrary to the law and the evidence,' and (c) the 'Court erred in denying Defendant's Special Request No. 1 dealing with the identity charge.'" *State v. Eric Wright*, No. 02-C-019107CR00152, 1992 WL 1414, at *1 (Tenn. Crim. App., at Jackson, Jan. 8, 1992) (memorandum opinion) (footnotes omitted) (quoting the petitioner's brief). Pursuant to Rule 20 of the Rules of the Tennessee Court of Criminal Appeals, this court affirmed the petitioner's convictions and sentences. *Id.* This court concluded that the petitioner's first issue did not comport with the Tennessee Rules of Appellate Procedure but

---

[2] The Colemans were married on October 19, 1989.

in dictum opined that the evidence was sufficient to sustain the convictions. *Id.* This court further concluded that the petitioner's second issue was an improper question, and his third issue was without merit based on Tennessee precedents. *Id.*

Following the judgment of this court, counsel, who represented the petitioner at trial and on appeal, "'failed to notify his client that judgment had been rendered, failed to file a motion to withdraw pursuant to Supreme Court Rule 14, and failed to file a Rule 11 application with [the Tennessee Supreme] Court.'" *Eric Wright v. State*, No. W2001-00386-CCA-R3-PC, 2001 WL 1690194, at *1 (Tenn. Crim. App., at Jackson, Dec. 17, 2001) (quoting a September 8, 2000, Tennessee Supreme Court order, which is not in the appellate record before this court). The record indicates that the Board of Professional Responsibility publicly censured counsel for his failures in this regard. When the petitioner filed a motion with the Tennessee Supreme Court for appointment of counsel to represent him in a Rule 11 appeal, the court denied the request and "indicated that 'the [petitioner's] recourse is to file a post-conviction petition alleging ineffective assistance of counsel and seeking a delayed appeal.'" *Id.*

The petitioner filed his first petition for post-conviction relief on December 11, 2000. *Id.* The post-conviction court dismissed his petition without an evidentiary hearing, ruling that the petitioner filed the petition outside of the statute of limitations and did not allege facts that would toll the statute of limitations. *Id.* This court concluded that the post-conviction court erred by dismissing the petition without an evidentiary hearing and remanded for a hearing pursuant to *Williams v. State*, 44 S.W.3d 464, 471 (Tenn. 2001), "to determine '(1) whether due process tolled the statute of limitations so as to give the [petitioner] a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner; and (2) if so, whether the [petitioner's] filing of the post-conviction petition [in December 2000] was within the reasonable opportunity afforded by the due process tolling.'" *Id.* at *2 (quoting *Williams*, 44 S.W.3d at 471).

Upon remand, the post-conviction court held an evidentiary hearing and ruled that due process concerns tolled the statute of limitations. The post-conviction court subsequently granted permission for the petitioner to seek a delayed Rule 11 appeal. The post-conviction court also dismissed the post-conviction petition without prejudice. The Tennessee Supreme Court denied the petitioner's application for permission to appeal. *State v. Eric R. Wright*, No. W1991-00016-SC-R11-CD (Tenn. 2005) (per curiam) (order denying application).

In May 2005, the petitioner filed a motion styled "Motion to Reopen Post-Conviction Relief." Contemporaneously, the petitioner filed his second petition for post-conviction relief. The petitioner, through his court-appointed post-conviction counsel, filed an amended petition for post-conviction relief on February 26, 2008. The state denied the allegations but

conceded that the allegations required an evidentiary hearing. The post-conviction court held an evidentiary hearing on January 15, 2009, at which the parties presented the following evidence.

The court admitted the trial transcripts, trial exhibits, post-trial motions and transcripts of post-trial hearings, this court's opinion on direct appeal, the Board of Professional Responsibility's report on counsel's public censure, and the transcript of the previous post-conviction proceeding held by Judge Dailey as evidence. The parties stipulated that counsel was unavailable as a witness due to medical reasons.

The petitioner testified that he retained counsel after his preliminary hearing to represent him in criminal court. He said that counsel met with him two or three times prior to trial. The petitioner said that he told counsel about his alibi witnesses two days before the trial began, and counsel called those witnesses to testify on the petitioner's behalf. The petitioner said that he asked counsel to interview the victims in the case, but to his knowledge, counsel did not do so. He said that he never reviewed counsel's file in his case, either before, during, or after trial, and the Board of Professional Responsibility informed him that counsel destroyed the file. The petitioner said that he never discussed the defense theory with counsel, but he believed that counsel planned to challenge the victims' identification. The petitioner testified that counsel allowed the trial court to sentence him beyond his range.

On cross-examination, the petitioner said that both times that he met with counsel, they discussed challenging the identification. The state asked the petitioner about counsel's testimony during the post-conviction proceeding before Judge Dailey that he gave the petitioner's file to either the petitioner's sister or girlfriend. The petitioner responded that he knew that counsel did not give them the file because they would have given the file to him, which they did not do.

Responding to questions by the post-conviction court, the petitioner testified that he was twenty-one when he went to trial. His family hired counsel to represent him because counsel had previously represented his sister. He said that counsel never gave him copies of anything pertaining to his case. The petitioner testified that counsel told him that he interviewed a witness, but counsel did not show the petitioner the statement that the witness gave. The petitioner said that he gave counsel his witnesses' addresses approximately two months before trial. The witnesses knew when to come to court because the petitioner wrote to them. He said that counsel did not subpoena them and did not interview them until they came to court for his trial.

The Honorable Judge Chris Craft, who was an Assistant District Attorney General at the time, prosecuted the petitioner on behalf of the state in this matter. He testified that he was familiar with counsel because he tried cases with counsel representing co-defendants, he tried cases against counsel as a prosecutor, and he appointed counsel to represent defendants as a trial judge. Judge Craft testified that, at the time of the petitioner's trial, counsel "was considered one of the preeminent criminal attorneys in Memphis and one of the few attorneys that would be appointed by the judges to represent[] people in death cases." Judge Craft stated that he "was never disappointed" in counsel's performance in cases Judge Craft appointed to him.

Judge Craft recalled that he discussed the preliminary hearing with counsel, and they either listened to a recording of the hearing or went through the transcript. He said that the victims in this case refused to give him their address because they were afraid that the second person involved in the robbery would find them. He was, therefore, unable to share their address with counsel. Judge Craft testified that the victims did not give him or counsel an opportunity to interview them until the first day of the trial. Concerning the petitioner's alibi witnesses, Judge Craft recalled that counsel told him that he would be calling alibi witnesses, but some witnesses came on the day of trial of whom Judge Craft did not have notice. He testified that the alibi witnesses "lied and got all confused." Judge Craft said that "[t]here [was] nothing [counsel] could have done to prepare them" for his cross-examination.

Judge Craft explained that the police arrested the petitioner on October 22, 1989, in an unrelated matter, and found a .22 caliber pistol in the course of the arrest. The petitioner subsequently gave the police a statement that he could not be involved in the Circle K robbery because he was arrested with a .22 caliber while the robber shot the victims with a .32 caliber. Judge Craft said that the police had not released that information to the public, so the fact that the petitioner knew what caliber the robber used was key evidence against him. He interviewed the police officers involved in the petitioner's arrest to ensure that they did not inadvertently give that information to the petitioner. He said that counsel moved to suppress the petitioner's statement, but Judge Axley admitted the evidence. Judge Craft testified that he was able to use the incident leading to the petitioner's October 22 arrest in order to explain why he gave a statement to police.

Judge Craft testified that the investigating officers showed Mrs. Coleman two photospreads, and the first included an older photograph of the petitioner than the second one. He said that Mrs. Coleman viewed the set of photographs constituting each photospread one at a time because she was lying on her back in the hospital, unable to move. Judge Craft testified that Mrs. Coleman identified the petitioner as the robber five times: the first photospread, the preliminary hearing, the second photospread, in court, and an in-court photospread. Judge Craft said that during the trial, Judge Axley was confused by the

-5-

different dates of the photospreads, so he asked a witness a question to clear up his confusion. Counsel had a "heated exchange" with Judge Axley during the hearing on the motion for new trial because counsel wanted the jury to be confused about the different photospreads in order to promote reasonable doubt. Judge Craft testified that counsel "made a lot of objections" during the trial and was "an attack dog."

Concerning the petitioner's sentencing, Judge Craft testified that the law required the court to calculate the petitioner's sentences under the law as it existed prior to the enactment of the Sentencing Reform Act of 1989 and also under the Sentencing Reform Act of 1989 and then sentence him to the lesser sentence. Judge Craft said that it was common practice for judges to take a recess after hearing arguments at a sentencing hearing in order to calculate the sentences, and he assumed that the recess indicated by the sentencing hearing transcript was for that purpose. He testified that he argued for the petitioner to receive an effective sentence of 150 years at forty-five percent release eligibility, which was how Judge Axley ultimately sentenced the petitioner. He said that under the pre-1989 sentencing law, the petitioner would not have been eligible for parole because his offenses were Class X felonies, so he would have received a maximum of 180 years, sixty years for each offense, and would have had to serve that time day for day.

On cross-examination, Judge Craft testified that he had no independent memory of what Judge Axley did during the recess that he took during the sentencing hearing. He had no memory of counsel being surprised by Mrs. Coleman's testimony that the petitioner's accomplice touched the orange juice bottle. He did not recall whether he and counsel listened to the preliminary hearing recording or read through the transcript nor did he recall on what day they reviewed the preliminary hearing. Judge Craft recalled that counsel objected to the admission of evidence that the petitioner was illegally in possession of a .22 caliber pistol during the suppression hearing, but he did not remember whether counsel objected to that evidence during trial.

On redirect examination, Judge Craft testified that counsel had access to the prosecution's entire file.

Following the hearing, the post-conviction court denied relief, finding that counsel did not provide ineffective assistance.

**Analysis**

*I. Ineffective Assistance of Counsel*

-6-

The petitioner argues that counsel provided ineffective assistance when he failed to object to improper judicial comments, failed to argue on appeal that the trial court's comments were improper, and failed to properly investigate and prepare for trial.

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *See also Arnold v. State,* 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland,* 466 U.S. at 688. *See also Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. *See also Nichols v. State,* 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State,* 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland,* 466 U.S. at 694.

The claim of ineffective assistance of counsel is a mixed question of law and fact and is subject to *de novo* review; however, we review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a *de novo* standard with no presumption of correctness. *Id.* We may neither re-weigh or re-evaluate the evidence nor substitute our own inferences for those drawn by the trial court. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

### A. Judicial Comment

The petitioner's first two allegations of ineffective assistance of counsel involve an allegedly improper comment by Judge Axley to which counsel did not object and which he did not raise on appeal. If the comment by Judge Axley did not constitute an impermissible comment on the evidence, then the petitioner's first two allegations are without merit. *See Carpenter v. State*, 126 S.W.3d 879, 887-88 (Tenn. 2004). Therefore, we will first determine whether the comment was impermissible.

The state constitution forbids judges from instructing juries on the facts of the case. Tenn. Const. art. VI, § 9 (stating that "[t]he [j]udges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law"). "In all cases the trial judge must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *State v. Suttles*, 767 S.W.2d 403, 406-07 (Tenn. 1989). If the reviewing court finds that a trial judge made an improper comment on the evidence, then the court must consider whether the comment was prejudicial in the context of the case. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 134 (Tenn. 2004).

In this case, the trial transcripts reveal that counsel made repeated objections to the state's cross-examination of a defense witness. The trial court ruled against counsel; nevertheless, the state ceased cross-examination. When the state indicated that it had no more questions for the witness, the trial court said, "All right. You won. Redirect." Counsel responded, "Yes, Sir."

The post-conviction court found that Judge Axley's comment was directed to counsel, not to the state. The petitioner did not present any evidence at the post-conviction hearing that would preponderate against the post-conviction court's finding, nor does any other evidence in the record preponderate against that finding. Therefore, the post-conviction court's finding is entitled to a presumption of correctness. *Fields*, 40 S.W.3d at 456-57. The petitioner's argument that Judge Axley's comment was improper is premised on the assumption that Judge Axley directed the comment to the state or that the comment was ambiguous. Based on the post-conviction court's finding that Judge Axley directed the comment to counsel, we must conclude that the petitioner's argument is without merit. Even if the comment was improper, the petitioner cannot show prejudice because the record indicates that the state ceased the cross-examination to which counsel was objecting. Therefore, the petitioner's first two claims of ineffective assistance -- that counsel was ineffective for failing (1) to object to Judge Axley's comment and (2) to raise the issue on appeal -- are without merit because Judge Axley's comment did not constitute an impermissible comment on the evidence that prejudiced the petitioner.

## *B. Failure to Properly Investigate and Prepare*

The petitioner argues that counsel provided ineffective assistance by failing to properly investigate and prepare for the case. Specifically, he alleges that (1) counsel failed to listen to the recording of the preliminary hearing before trial; (2) counsel failed to interview the victims, detectives, and other witness before trial; (3) counsel failed to locate witnesses favorable to the petitioner and present them at trial; (4) counsel failed to interview and prepare the petitioner's alibi witnesses prior to trial; (5) counsel failed to argue that the court should suppress petitioner's October 28, 1989 statement as involuntary; (6) counsel

failed to object to the admission of the petitioner's October 22, 1989 arrest as impermissible "other crimes" evidence; and (7) counsel failed to challenge the procedure used by the police when they showed the photospreads to Mrs. Coleman.

The petitioner has not proven by clear and convincing evidence that counsel did not listen to the preliminary hearing recording or obtain a transcript of the hearing prior to trial. Judge Craft, whose testimony the post-conviction court accredited, testified that he could not recall exactly when he and counsel went over the preliminary hearing. The trial transcript reflects that Judge Craft and counsel listened to the recording on August 21, 1990, but the petitioner has not shown that this was the only time or the first time that counsel listened to the recording. Furthermore, the petitioner has not proven that he was prejudiced by counsel's alleged failure. He states in his brief that "[counsel] planned to argue that [the petitioner's] fingerprints were not found on an orange juice bottle touched by one of the perpetrators," but because of Mrs. Coleman's testimony at the preliminary hearing that the petitioner's accomplice touched the bottle, counsel's defense theory was nullified. He further alleges that counsel was surprised when he learned of Mrs. Coleman's testimony, citing to the trial transcript where the court asked counsel, "[A]re you calling surprise at this time?" In context, however, the parties and the court were discussing the fact that Mr. Coleman had just revealed, for the first time, that he was able to identify the shooter at the preliminary hearing.[3] When the court asked counsel whether he was "calling surprise," counsel responded that he was calling surprise as to Mr. Coleman's identification, clarifying that he was *not* surprised by Mrs. Coleman's testimony concerning the orange juice bottle because, he said, "that's consistent with what she testified to . . . ." The petitioner has not shown any proof that counsel based his defense theory on the lack of the defendant's fingerprints on the bottle. Therefore, the petitioner has not proven that counsel was deficient in this regard or that he was prejudiced by counsel's alleged failure.

The petitioner has not proven that counsel was deficient for failing to interview the victims prior to trial. Judge Craft testified that the victims refused to tell anyone where they were. He did not speak to them until the day of trial, and counsel never had the opportunity to do so either. As for other state's witnesses, the petitioner has not presented any proof that counsel did not interview them or obtain their statements or that he was prejudiced by counsel's alleged failure.

As for witnesses favorable to the petitioner, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273

---

[3] Mr. Coleman attended the preliminary hearing, but the state did not call him to testify.

(Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

The petitioner has not proven that counsel was deficient for failing to properly prepare his alibi witnesses for trial. The petitioner testified that he gave counsel the names of the alibi witnesses two days before trial. Someone told the alibi witnesses when to come to the courthouse, and they did, in fact, testify on the petitioner's behalf. The petitioner did not present these alibi witnesses at the post-conviction hearing, so there is no evidence that they would have held up under Judge Craft's cross-examination had counsel prepared them differently.

The petitioner has not shown that counsel was deficient for failing to make specific arguments regarding the petitioner's October 22, 1989, arrest and his subsequent statement to police. Counsel moved to suppress the statement to police, and his motion is not in the record before this court. While we do not know the exact arguments made by counsel in support of his motion, the state argued at the hearing that the petitioner's statement was voluntary. Counsel made no arguments during the hearing. The trial court agreed with the state and denied the motion to suppress. Judge Craft testified that the preceding arrest was admissible as evidence to explain why the petitioner gave a statement to police. Counsel did attempt to suppress the evidence. The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad,* 938 S.W.2d at 369.

Finally, the petitioner has not shown that counsel was deficient for failing to object to the police procedure used when investigators showed Mrs. Coleman two photospreads, one of which contained an older picture of the petitioner and one of which contained a contemporary picture. The record reflects that Mrs. Coleman identified the petitioner as the shooter multiple times, in photographs and in person. Her identification appeared to be solid and unwavering. The petitioner alleges that the procedure was suggestive but presents no evidence in support of his argument. Accordingly, his argument is without merit.

The petitioner has not proven by clear and convincing evidence that counsel was deficient or that he was prejudiced by counsel's alleged errors. Therefore, he is without relief as to this issue.

*II. Sentencing*

-10-

The petitioner argues that his sentence violates the prohibition against ex post facto laws "[b]ecause the trial court did not comply with the ex post facto prohibitions of the U.S. and Tennessee Constitutions." Specifically, he argues that the trial court only sentenced him under the Sentencing Reform Act of 1989 rather than calculating his sentence under both the pre-1989 law and the 1989 law. The state responds that the trial court properly sentenced the petitioner.

Tennessee Code Annotated section 40-35-117 provides that persons sentenced after November 1, 1989, for crimes committed between July 1, 1982, and November 1, 1989, must be sentenced under the 1989 Act, "[u]nless prohibited by the United States or Tennessee Constitution ." Tenn. Code Ann. § 40-35-117(b). Also, Tennessee Code Annotated section 39-11-112 states that if the 1989 Act provides for a lesser penalty, punishment shall be imposed in accordance with the 1989 Act. Furthermore, compliance with the ex post facto prohibitions of the federal and Tennessee Constitutions, requires that "trial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two." *State v. Pearson*, 858 S.W.2d 879, 884 (Tenn. 1993).

The petitioner contends that the absence of evidence that Judge Axley calculated the petitioner's sentence under the 1982 law and the 1989 law requires this court to remand for a new sentencing hearing. We agree with the state that the petitioner's argument is misplaced. Under the 1982 Act, the petitioner's convictions for assault with intent to murder, with bodily injury to the victims, and robbery by use of a deadly weapon were Class X felonies. *See* Tenn. Code Ann. § 39-1-702 (1982). Sentences for Class X felonies were determinate in nature, not subject to sentencing credits, and expired after service of the entire sentence, day for day. *Id.* at § 39-1-703. Punishment for assault with intent to murder was "a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years." *Id.* at § 39-2-103. Punishment for robbery by use of a deadly weapon was "death by electrocution, or the jury [could have] commute[d] the punishment to imprisonment for life or for any period of time not less than ten (10) years." *Id.* at § 39-2-501. If the petitioner had received the maximum allowable sentence under the 1982 Act, he would have received 180 years at 100%. The trial court sentenced the petitioner to 150 years at 45% under the 1989 Act. Clearly, the petitioner received the lesser sentence. There was no violation of the prohibition against ex post facto laws; therefore, the petitioner's argument is without merit.

The petitioner argues in the alternative that his counsel was ineffective for failing to address the ex post facto issue at the sentencing hearing and for failing to raise the issue on

appeal. Because the argument is without merit, the petitioner's alternative argument is likewise without merit.

Additionally, the state argues that the petitioner waived his challenge to the trial court's sentencing decision because he failed to raise it in his direct appeal. Based on the record, we conclude that the state itself waived its waiver argument by not presenting it in the post-conviction court. *Walsh v. State,* 166 S.W.3d 641, 645 (Tenn. 2005). "Issues not addressed in the post-conviction court will generally not be addressed on appeal." *Id.*

## Conclusion

Based on the foregoing reasons, we affirm the denial of post-conviction relief.


_____
J.C. McLIN, JUDGE